**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**Jessica McKelvey**,


**Plaintiff,**


**v.**                                                                      Civil Action No.:

                                                                           **COMPLIANT & JURY DEMAND**

**American Airlines**,
**A Passenger Aircraft Carrier Corporation,**
**Owner and operator of the aircraft, its managers,**
**and its shareholder owners,**


**and**


**International Aero Engines (IAE),**
**as aircraft manufacturer, its managers, and**
**its shareholder owners, hereinafter "IAE,"**


**and**


**Bryan Bedford, present Director of the Federal Aviation Administration,**
**On behalf of the Federal Aviation Administration,**
**hereinafter "FAA,"**


**and**


**Michael Whitaker, former Director of the FAA during the incident herein in 2023,**
**In his individual capacity, hereinafter "FAA,"**


**And**


**The unidentified individuals employed by the FAA who investigated this incident herein in 2023, in their individual capacities, hereinafter "FAA,"**


**And**


**The unidentified individuals employed by the FAA who destroyed critical records of this incident either in 2023 or 2024, in their individual capacities, hereinafter "FAA,"**


**Defendants.**
_____ /

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR DISCRIMINATION BASED ON RACE & SEXUAL ORIENTATION, VIOLATIONS OF CIVIL RIGHTS AND LIBERTIES, BREACH OF CONTRACT & NEGLIGENT INVESTIGATION, NEGLIGENT MAINTENANCE OF AN AIRCRAFT, NEGLIGENT MANUFACTURE OF AIRCRAFT PARTS**

COMES NOW, Plaintiff, Jessica McKelvey, by and through her counsel, Kati Kmororsky, LLM,

with Komorosky Law, PLLC, and states as follows:

**I. INTRODUCTION**

Plaintiff Jessica McKelvey, an esteemed career professional with over 16 years in aviation safety. On or about July 21, 2023, Plaintiff experienced unprecedented discriminatory targeting and unjust treatment when she was falsely accused of tampering with an aircraft exit door while onboard American Airlines Flight 1162. Plaintiff has a background in aviation safety. She selflessly volunteered to sit in the exit row, seat 24G, and assist the flight crew in the event of an emergency. Plaintiff volunteered to assume this role after no other passengers aboard the aircraft were willing to volunteer for the role.

Plaintiff was wrongfully accused of tampering with the aircraft's emergency equipment based on a maliciously false, mistaken, and erroneous and report made by an off-duty law enforcement officer (the "complaining witness") that targeted Plaintiff. Upon investigation, it was later determined that the complaining witness's view of Plaintiff was unclear and obstructed because he was seated several rows behind Plaintiff on the aircraft. Moreover, the complaining witness's observation time of Plaintiff was especially brief since the Plaintiff was only in his line of sight for a very brief moment when he stood up from his assigned seat to use the lavatory. The complaining witness then launched a serious and unsubstantiated accusation against Plaintiff without having any reasonable or reliable degree of evidence, and without having ever conducted any type of investigation.

Had the FAA and American Airlines performed even the slightest of investigations, they would have easily discovered there have been a significant number of reported incidents of aircraft door sensor malfunctions caused by mechanical issues, and on that particular day there was a malfunction with the emergency exit door next to Plaintiff's seat. Rather than American Airlines simply addressing these mechanical issues with the door sensors to ensure the safety of the passengers who have entrusted them with their safe transport, the aircraft's Captain instead chose to escalate the complaint situation based on the allegation made against Plaintiff rather than actually conducting his own investigation into the situation given his knowledge of a substantial number of prior door sensor malfunction complaints. The aircraft Captain's chosen course of action resulted in Plaintiff being forcefully removed, detained, and interrogated - without ever being afforded the opportunity to have an attorney present - which was and is her right. Plaintiff's wrongful detention caused her to miss the birth of her granddaughter - a "once in a lifetime" milestone event which was the entire purpose of her trip in the first place.

Plaintiff is a racial minority (Mexican and Black) lesbian female. She wears her dyed red hair woven into her natural dreadlocks. On the day of her flight, she was dressed in a T-shirt displaying the words "rock, paper, scissors" in rainbow lettering.  Notably, FAA and FBI documents identify her as someone of "unknown race origin". The ability of these federal agencies to conclusively determine her racial origin appears to have formed the basis for Plaintiff's detention at the *ONT* airport upon landing. American Airlines' treatment of Plaintiff continues their consistent and pervasive pattern of discrimination against African American and Black passengers which dated back as far as 2017.

American Airlines has a history of disparate treatment of racial minorities, and it is so severe that the NAACP, the nation's oldest civil rights organization, issued a travel warning to

warn Black passengers to exercise caution when flying on American Airlines. Black American Airlines passengers have found themselves subjected to baseless allegations that range from closing restroom doors too loudly to being removed from the aircraft for alleged "body odor" when in fact no such complaints had actually been made. See, *Alvin Jackson et al. v. American Airlines, Inc.*, Case No. 1:24-cv-03818 in the U.S. District Court for the Eastern District of New York.  *See also*, Jonathan Franklin, NPR (May 29, 2024) https://www.npr.org/2024/05/29/nx-s1-4984840/american-airlines-8-black-men-body-odor-discrimination-lawsuit, last accessed Feb. 23, 2026). Notably, the later incident ultimately settled out of court and resulted in the termination of the flight attendants involved in the incident.

The Federal Aviation Administration (FAA) continued to subject Plaintiff to disparate treatment when they sought to impose a civil fine against her for something she did not do. The Federal Bureau of Investigation (FBI) determined that there was a lack of sufficient evidence to pursue a criminal case against Plaintiff (*i.e.* no probable cause) - because the act she was accused of performing never happened. The FAA nor the FBI even bothered to dust the aircraft door for Plaintiff's fingerprints. The FAA based their case on non-existent and/or spoiled evidence which the FAA was statutorily required to retain. Moreover, the FAA's case lacked sufficient grounds and this lack of evidence ultimately resulted in the case being dismissed and all charges dropped at an informal hearing when Plaintiff had the benefit of having her counsel present.

The FAA's handling of this matter highlights a pervasive pattern where the agency fails to sufficiently investigate incidents and further fails to ensure that routine maintenance and repairs are completed by air carriers in a timely manner. Arguably, if the FAA had taken the reports of sensor malfunctions seriously, incidents such as the one Plaintiff was subjected to could have been prevented and could prevent others from enduring the same fate.

American Airlines' systemic and discriminatory actions, as well as those of the FAA, not only highlight a blatant disregard for individual rights, and adherence to proper procedure, but they also expose a pattern of gross negligence and discriminatory conduct that must not be allowed to continue.

## II. JURISDICTION & VENUE

### A.  Subject Matter Jurisdiction

This Court has subject matter jurisdiction over the claims presented in this Complaint pursuant to federal question jurisdiction by 28 U.S.C. § 1331 because this matter arises from a civil action arising under the laws of the United States including violations of: U.S. Const. Amend. I; U.S. Const. Amend. IV, U.S. Const. Amend. V; U.S. Const. Amend. XIV; 42 U.S.C. § 1983, Deprivation of Rights under Color of Law; 42 U.S.C. §2000a, 26 Stat. 209, Discrimination under Title II of the Civil Rights Act of 1964; and 49 U.S.C. § 40127, Racial Discrimination. The Court also has supplemental jurisdiction by diversity standards under 28 U.S.C. § 1332 for breach of contract by Defendant American Airlines and several counts of negligence as to all Defendants (negligent investigation as to FAA and American Airlines and negligent manufacturing as to IAE).

### B.  Personal Jurisdiction

This Court has personal jurisdiction over the Defendant American Airlines and Defendant Federal Aviation Administration because Defendants have established minimum contacts with this jurisdiction, and because the Plaintiff resides in this jurisdiction. In particular, the aircraft ticket purchased by Plaintiff's mother for her flight was purchased in this jurisdiction. As such, requiring the Defendants to defend this action in this Court does not offend traditional notions of fair play and substantial justice.

### C. VENUE

Venue is proper in the Western District of Michigan Federal Court as the Plaintiff resides in this district, and the Defendants have sufficient business contacts within this jurisdiction for venue to be proper here.

## III. PARTIES

A. Plaintiff **Jessica McKelvey** is an individual person who is a citizen of the State of Michigan that resides within this district.

B. Defendant American Airlines is a corporation organized under the laws of the State of Delaware with its principal place of business in Fort Worth, Texas. American Airlines is a citizen of both Delaware and Texas for jurisdictional purposes.

C. Defendant International Aero Engines (IAE) is a foreign corporation which operates in the United States. IAE categorizes itself as a joint venture and consortium of aerospace manufacturers which include Pratt & Whitney, Rolls-Royce, MTU Aero Engines, and Japanese Aero Engines Corporation. IAE operates in the U.S., Europe, and Japan and lists its primary U.S. operational office under Pratt & Whitney, 400 Main Street, East Hartford, CT 06118. The company's Registered Agent is listed as CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324.

D. Defendant Federal Aviation Administration (FAA) is an agency of the United States government with its headquarters located at 800 Independence Avenue, SW, Washington, D.C. 20591.

## IV. GENERAL ALLEGATIONS

1. On July 21, 2023, Plaintiff Jessica Perusse McKelvey arrived at the South Bend, Indiana airport to board American Airlines flight #1162 to Ontario, California (ONT), with a connecting flight through Dallas-Fort Worth (DFW).

2. The purpose of Plaintiff's trip was to visit her pregnant daughter and to be present for the birth of her grandchild, as well as to provide assistance in caring for both her daughter and grandchild following the delivery.

3. Plaintiff's daughter went into labor the night prior to Plaintiff's scheduled flight, and Plaintiff intended to arrive in California in time to attend the birth of her grandchild.

4. Margaret Koeler, the Plaintiff's mother, acting as an authorized user of the credit card issued to her husband, Ralph Northcliff, purchased an airline ticket for her daughter, Plaintiff Jessica McKelvey, on the day of travel.

5. Through this transaction, Koeler entered into a contractual relationship with American Airlines, the carrier.

6. Plaintiff McKelvey, although not the original purchaser, was identified as the intended third-party beneficiary of the airline ticket and the contract.

7. Plaintiff McKelvey subsequently boarded the first leg of her flight from South Bend, Indiana (SBN) to Dallas/Fort Worth International Airport (DFW).

8. At DFW, she boarded her connecting flight (AA #1162) to Ontario International Airport (ONT).

9. American Airlines operated flight #1162 under 14 C.F.R. Part 121 of the Federal Aviation Regulations, and at all times was subject to oversight of the Federal Aviation Administration (FAA).

10. The equipment in service on July 21, 2023, for Flight #1162 was an Airbus A321-231, Serial Number 5899, Model V2533-A5, Registration Mark N572UW.

11. This aircraft was manufactured by Defendant Inter Aero Engines (IAE), and it received its original airworthiness certificate on Dec. 13, 2013.

12. The aircraft's original airworthiness certificate was issued to U.S. Airways and its subsidiaries.

13. The plane was placed into service as a new aircraft, manufactured by Inter Aero Engines (IAE) and was imported into the United States from its original place of origin in Hamburg, Germany.

14. As an aircraft manufacturer Defendant IAE owes a duty of care to ensure its planes are safe and manufactured and assembled in accordance with all applicable industry safety standards.

15. Defendant IAE is further responsible for ensuring it hires, trains, and adequately supervises competent employees, contractors, and agents.

16. IAE's duty of care extends to the manufacturing process where they must ensure that the process is consistent and complies with all applicable U.S. quality standards, procedures, policies, and processes, as well as ensuring they remain in compliance with both European and U.S. aviation safety standards, statutes, and regulations.

17. They must also certify each aircraft's component parts, and the total aircraft is airworthy.

18. Defendant IAE is bound by a continuing duty of care to not only discover, but to also inform purchasers, the Federal Aviation Administration (FAA), the National Transportation Safety Board (NTSB), and the general public of all recalls related to aircraft models and their component parts, as well as to ensure the proper repair of such

component parts is completed in a timely manner - particularly when the quality and integrity of the aircraft could potentially endanger the lives of the aircraft's occupants and those on the ground.

19. The Defendant has a continuing duty of care to identify and disclose to purchasers any known or potential defects in the manufacture or assembly of its aircraft, including all component parts and subparts.

20. This duty includes developing and providing recommended maintenance and safety inspection schedules that ensure the aircraft's quality, operational integrity, and safe performance.

21. It further applies to all critical components, including but not limited to sensors; door plugs; cockpit emergency exit and cabin door components; cabin and doorway sensors; and all mechanical, hydraulic, chemical, and electrical parts or sensors, particularly those associated with doors, including so-called "blocker doors" and especially on the emergency exits.

22. Defendant's duty exists to ensure the safe functionality and structural integrity of the aircraft, to protect the well-being of the aircraft's passengers and crew, and to safeguard people and property on the ground below.

23. This lawsuit alleges Defendant IAE breached its duty of care to Plaintiff, that Plaintiff suffered harm because of this breach of the duty of care, that the harm suffered by Plaintiff is the kind of harm that our laws, statutes, regulations, and contracts are designed to prevent, at least in part.

24. This lawsuit further alleges that Defendant IAE is in violation of implied contract with an intended and foreseeable third-party beneficiary (Plaintiff McKelvey and her mother).

25. Plaintiff allege Defendant IAE was additionally negligent in its manufacture of component parts and the aircraft, the negligent assembly of its component parts and the aircraft as a whole.

26. Defendant IAE was further negligent in establishing necessary recall procedures for the aircraft and/or its component parts, warranties for component parts and the aircraft itself, and was grossly negligent, negligent, and/or negligent per se for failing to do so. Defendant IAE must therefore be held accountable and found liable for Plaintiff' damages, jointly and severally.

27. In 2013, American Airlines acquired U.S. Airways, resulting in a merger between the two companies.

28. According to publicly available information, this aircraft was delivered during the same year.

29. Following the acquisition, American Airlines obtained the subject aircraft in comparatively new condition.

30. Thereafter, Defendant American Airlines was under a continuing duty of care to perform routine safety checks between flights at regular maintenance intervals, to keep detailed records of those safety checks, to report all defects to Defendant IAE as the aircraft's manufacturer, and to properly keep, operate, maintain, and repair the aircraft in an airworthy condition.

31. Defendant IAE was also required to maintain detailed records of all maintenance and repairs to ensure the continued safety and well-being of passengers and the aircraft's crew.

32. Defendant American Airlines negligently hired and failed to properly train, and/or supervise its employees, agents, and/or contractors.

33. Defendant American Airlines failed to ensure its employees and agents followed procedures designed to adequately identify, report, and repair, manufacturing defects and/or damages to the aircraft and its component parts.

34. Moreover, Defendant American Airlines failed to properly keep and maintain the aircraft in airworthy condition.

35. Defendant American Airlines' negligent refusal to do so resulted in passengers and crew being placed in harm's way - including Plaintiff McKelvey who ultimately became the scapegoat for American Airlines' failure based on Plaintiff's perceived race, nationality, and sexual orientation.

36. American Airlines' history of engaging in unlawful and discriminatory conduct against its own passengers is well-documented.

37. Defendant American Airlines engaged in racially discriminatory conduct on or about January 5, 2024 at the airlines' Dallas/Fort Worth terminal when passengers "Alvin Jackson, Emmanuel Jean Joseph and Xavier Veal – and five other Black male passengers were ejected from American Flight 832 from Phoenix to JFK in New York City…, 'without any valid reason, based solely on their race,' according to the complaint." (Marnie Hunter, CNN, *Black passengers sue American Airlines, alleging they were thrown off a plane because of false body odor complaint* (May 29, 2024). All of the black men were allegedly removed from that aircraft before takeoff that day.

38. Defendant American Airlines also was contractually bound to comply with the terms of the ticket contract which was purchased by Koehler, and held by passenger Plaintiff McKelvey, as the intended third-party beneficiary of the purchased ticket.

39. As a commercial airline carrier, Defendant American Airlines, had a duty to demonstrate good faith and fair dealing, and to afford Plaintiff as an intended third-party beneficiary, all rights and benefits owed to under all applicable laws of the United States – in particular, Title II of the Civil Rights Act of 1964, and the laws of the State of Michigan (where Plaintiff reside and where the ticket was purchased).

40. The stated legislative purpose of these laws is to protect passengers from discrimination in airline travel.

41. The Plaintiff alleges that Defendant American Airlines failed to fulfill its duty of care.

42. As a result, Plaintiff experienced harm directly and proximately due to this breach of duty and breach of contract.

43. The injuries sustained by Plaintiff are those the legislatively imposed duty of care was designed to prevent.

44. It is further alleged that American Airlines and co-Defendants acted negligently, with gross negligence, and violated relevant laws; accordingly, they should be held jointly and severally liable for the resulting harm and injustice inflicted upon the Plaintiff.

45. The facts of this case are clear - a black, Mexican, lesbian woman was subjected to targeted discriminatory and disparate treatment as a passenger on an aircraft.

46. Black Americans and Mexican Americans do not have to live this way, nor should they fear removal from a flight because of baseless, false accusations of criminal activity.

47. Defendant American Airlines most certainly would have been subject to fines and penalties for their blatant and negligent failure to properly maintain this aircraft. In an effort to avoid these fines and penalties, Defendant American Airlines chose to target and discriminate against Plaintiff McKelvey and make her the scapegoat instead.

48. When passengers began the boarding process, American Airlines employees requested a volunteer to sit in the emergency row next to the emergency exit door.

49. Plaintiff volunteered because she has extensive experience in aircraft safety gained through her employment in the aviation industry as a subcontracted employee for an aircraft manufacturer.

50. Plaintiff McKelvey at the time of the incident worked as one of the company's top safety (OASHA) personnel.

51. Notably, Plaintiff McKelvey was initially seated in a different seat and only changed seats upon the request of the crew.

52. Shortly after reaching cruising altitude, Plaintiff McKelvey fell asleep.

53. She lacked any intent to even touch the aircraft door handle, nor did she possess the intent to cause harm for anyone on board the aircraft.

54. After the flight was airborne, another passenger - an off-duty police officer, who was also a passenger onboard, thought he observed Plaintiff McKelvey touching the emergency exit door's handle.

55. What he actually observed, however, was later found to be Plaintiff McKelvey hunched over and asleep in her seat near the emergency exit.

56. Because the complaining witness was seated at the back of the aircraft several rows behind Plaintiff McKelvey, this off-duty officer made an erroneous assumption and reported his concern to the flight crew.

57. Notably, the off-duty officer's description of Plaintiff McKelvey was that of a "person of an unknown race" who appeared to be tampering with the emergency exit door.

58. Concurrently, as the off-duty officer was making his erroneous report to the flight crew, the flight's Captain received an alert that the sensor(s) on the emergency exit door in Row 24 where Plaintiff McKelvey was seated required maintenance.

59. The captain's alert indicated that there was a failure on the 3R door and that the door handle had become unlatched.

60. However, despite knowing the latch, defective sensor(s), and/or other maintenance issue caused of the emergency door becoming unlatched, the flight crew acting as agents of Defendant American Airlines, never instructed passengers to use their oxygen masks, or even remind them how to properly use their oxygen masks as passengers were confronted with the possibility of cabin depressurization.

61. Furthermore, Defendant American Airlines negligently failed to take any remedial steps to ground the aircraft to perform an investigation and/or necessary maintenance on the failed door sensor component part(s).

62. Instead, Defendant American Airlines pushed the false narrative that Plaintiff McKelvey caused the incident in violation of 14 C.F.R. §121.580 and 49 U.S.C. §46318.

63. Upon landing, Plaintiff McKelvey was forcibly removed from the aircraft by FBI agents who were there to respond to the false accusations made by the complaining witness and the flight crew during the flight. Plaintiff McKelvey was then subjected to interrogation

by the FBI without being afforded the opportunity to have legal representation. Plaintiff McKelvey was subsequently released at the ONT airport because the FBI found no credible evidence or sufficient cause (*e.g.,* no probable cause) to charge her with a crime.

64. On June 27, 2024, Plaintiff McKelvey received a "Notice of Proposed Civil Penalty" from the Federal Aviation Administration (FAA) for an amount not to exceed $36,516.00 pursuant to 49 U.S.C. §46318 and 14 C.F.R. §13.301, and an additional amount not to exceed $14,950, under 49 U.S.C. §46301(a)(5)(§A) and 14 C.F.R. §13.301.

65. Ultimately, Plaintiff McKelvey was initially assessed at $12,725.00, as a result of the erroneous report of tampering with the emergency exit door handle and its cover.

66. She was falsely accused of being a threat to the safety of the aircraft and its occupants, yet no investigation was ever conducted.

67. The aircraft door nor its component parts were ever inspected, and no determination was ever made that Plaintiff McKelvey was the cause of the door becoming ajar.

68. The FAA's enforcement action resulted in Plaintiff McKelvey being forced to retain legal counsel to protect her interests in an ensuing administrative proceeding related to the assessment of a civil penalty under Case Number 2023FS050269.

69. Plaintiff McKelvey's response to the FAA denied all the allegations and highlighted the likely probability that a sensor malfunction on the aircraft door was the proximate cause of the door latch breach - not the Plaintiff.

70. The undersigned subsequently requested an unredacted copy of the Enforcement Investigative Report (EIR). This request was denied, impeding Plaintiff McKelvey's ability to inspect and review this crucial piece of evidence which was necessary for her defense.

71. Following the FAA's denial of counsel's request for access to the EIR report, a FOIA request for all records related to this incident was submitted.

72. The FAA's response to the undersigned's FOIA request revealed that the FAA had, in fact, spoiled records related to this incident - contrary to federal document and record retention statutes.

73. An informal hearing was then held between the undersigned and the FAA's Office of Chief Counsel.

74. Plaintiff's counsel again raised the lack of probable cause supporting the allegations, and the improper handling of the sensor malfunction in violation of the FAA's own protocol and statutory obligations.

75. Plaintiff's counsel presented the FAA with evidence supporting the position that the FAA could not prove that Plaintiff McKelvey ever touched the emergency exit door. The undersigned presented a written acknowledgement from the FAA that they had, in fact, destroyed all records related to this incident while the civil penalty case was pending (prior to November 4, 2024).

76. Defendant American Airlines' failure to investigate known maintenance issues with the emergency exit door and its sensors not only unjustly targeted Plaintiff McKelvey but also placed the safety of all passengers and crew on the flight at risk.

77. The FAA Office of Chief Counsel dismissed the civil action on November 4, 2024, against Plaintiff McKelvey in its entirety - imposing zero dollars in penalties.

78. The dismissal of the FAA's charges against Plaintiff, however, do not negate her claims that the actions taken by American Airlines, law enforcement, and the FAA were

discriminatory, or that the discrimination she was racially motivated, based on her national origin, sexual orientation, and marital status.

79. The dismissal does not make Plaintiff McKelvey whole for the physical, emotional, and financial stress she endured.

80. Notably, although the FAA dismissed the case against Plaintiff McKelvey in its entirety, Defendant American Airlines has yet to lift the ban against her from flying on future American Airlines' flights.

81. The totality of the actions and inactions of Defendants American Airlines, IAE, and the FAA directly caused significant emotional distress, mental anguish, anxiety, financial loss, and reputational damage to Plaintiff McKelvey.

82. Moreover, the actions of the Defendants caused Plaintiff to miss the birth of her granddaughter – a once-in-a-lifetime experience that cannot be replicated.

83. Plaintiff McKelvey contends that following the dismissal of civil penalty proceedings, Defendant American Airlines was neither fined nor sanctioned by the FAA for alleged unlawful actions and improper handling of a significant safety-related incident.

84. The Plaintiff maintains that the FAA's response lacked the necessary gravity and that a diligent and comprehensive investigation could have mitigated or prevented later critical events, such as the blocker door incident involving Alaska Airlines, which resulted in severe injury or loss of life.

85. It should be emphasized that the FAA bears responsibility for safeguarding the airline industry's safety standards.

86. For example, in June 2025, the National Transportation Safety Board ("NTSB") reported that the Federal Aviation Administration (FAA) had been negligent in its investigation of similar blocker-door incidents.

87. This public finding highlights an ongoing pattern by the FAA of significant negligence in fulfilling its legal and regulatory responsibilities.

88. Because the government failed to properly investigate the emergency exit door next to the Plaintiff's seat where she was asleep during the flight and intentionally destroying crucial evidence during civil penalty proceedings in violation of document-retention rules, the Plaintiff was unjustly implicated in serious criminal and domestic terrorism allegations.

89. In the aggregate, these actions constitute malicious prosecution and deprived Plaintiff of her constitutional and statutory rights under the laws of the United States of America, the State of Michigan and the several states through which she traveled.

90. The actions of the Defendants jeopardized the safety of passengers on the referenced flight, as well as those on subsequent flights where comparable critical incidents occurred, notably including the Alaska Airlines flight in which a door detached from the aircraft during flight, resulting in serious injuries and fatalities.

91. As a direct and proximate consequence of the Defendants' conduct and omissions, Plaintiff has sustained significant damages, including severe emotional distress, mental anguish, anxiety, financial loss, and considerable reputational injury.

92. Plaintiff seek recovery of actual, compensatory, and punitive damages; all costs, expenses, and fees associated with this litigation; consequential damages; attorney's fees as permitted by law; and damages for emotional distress, mental pain and anguish,

anxiety, loss of services, loss of reputation and status. Plaintiff also request any further relief that the Court deems fair, just, proper, and permissible under applicable law.

93. This lawsuit further alleges that the Federal Aviation Administration (FAA) is responsible for the deprivation and denial of Plaintiff's civil rights under the laws of the United States law and the Constitution.

94. Plaintiff alleges this these individual and government actor exhibited gross negligence in the performance of their duties by failing to comply with federal or state statutes, neglecting to investigate a critical safety incident involving an aircraft door becoming ajar during flight and remaining ajar throughout descent, relying solely on statements from the airline which has a documented history of discrimination against people of color (particularly Black Americans) without verifying facts, omitting forensic examination such as dusting for fingerprints, failing to review relevant maintenance records, not issuing safety warnings, and enabling the airline to implicate a passenger absent a thorough investigation.

95. This lawsuit also alleges that even after the civil penalty was dismissed the FAA failed to impose any penalty or fine on Defendant American Airlines for its unlawful behavior and handling of this critical incident.

96. Additionally, the lawsuit asserts that had the FAA approached this issue with greater diligence and conducted a thorough investigation, it might have been able to prevent subsequent incidents, including the blocker door event involving Alaskan Airlines, which resulted in serious injuries or fatalities.

97. The NTSB determined that the FAA has demonstrated negligence in its investigations into blocker door incidents generally.

98. This conclusion was published on the NTSB's website in June 2025 and highlighted a recurring pattern of similar acts and omissions by the FAA in fulfilling its statutory duties.

99. The FAA's failure to conduct a thorough investigation regarding the emergency exit door adjacent to the Plaintiff, as well as its improper handling and destruction of evidence contrary to document retention requirements, resulted in the Plaintiff being wrongfully implicated in criminal and terrorist activities.

100.    The FAA's conduct resembles elements of malicious prosecution and led to the deprivation of the Plaintiff's constitutional rights, as well as her statutory rights under Michigan law and laws governing travel across multiple states. Furthermore, the FAA's actions and omissions impacted on the safety of all individuals aboard the flight and future flights, potentially contributing to incidents involving serious injury or fatalities, such as the referenced Alaskan Airlines event involving an aircraft door separation mid-flight.

101.    Defendants actions caused significant emotional distress, mental anguish, anxiety, financial loss, and reputational damage to Plaintiff McKelvey, and she is entitled to actual, compensatory, and punitive damages, as well as costs, expenses and fees related to the filing of this lawsuit, consequential damages, attorney's fees, and tremble damages for emotional distress, mental pain and anguish, anxiety, loss of services, loss of reputation and status, and all other losses, and any other relief this Court deems fair, just, proper, and permissible under the applicable laws.

## V. CAUSES OF ACTION

## A. COUNT I, VIOLATION OF TITLE II OF THE CIVIL RIGHTS ACT of 1964, 42 U.S.C. §2000a

102. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

103. Defendant American Airlines is an operator of a place of public accommodation, namely commercial aircraft flights within the United States. As an operator of a place of public accommodation operating in interstate commerce, Defendant falls within the purview of Title II of the Civil Rights Act of 1964, 42 U.S.C. §2000a which prohibits discrimination on the basis of race, color, religion, or national origin.

104. Plaintiff McKelvey was discriminated against by Defendant American Airlines based on her race and/or color when Defendant treated her differently than other passengers on the aircraft.

105. Plaintiff McKelvey is a person of color – a visually mixed-race woman who appears to be black.

106. Plaintiff was a passenger on American Airlines flight #1162 on July 21, 2023.

107. She was falsely accused by an off-duty police officer (the "complaining witness") of tampering with the aircraft's emergency exit door.

108. The complaining witness described Plaintiff as a "person of an unknown race" implicitly questioning her national origin which resulted in Plaintiff being subjected to unwarranted suspicion and a heightened level of scrutiny.

109. Acting as agents for Defendant American Airlines, the flight crew reported Plaintiff McKelvey to the aircraft's Captain.

110. By repeating the false allegations to a third-party, Plaintiff was then singled out and racially profiled based on her race, appearance, and perceived national origin.

111. This false accusation led to Plaintiff being forcibly removed from the aircraft when the plane landed.

112. She was interrogated by the FBI without her being afforded the opportunity to have legal representation, and she was subjected to a civil fine by the FAA.

113. These adverse actions were taken against Plaintiff based on her racial appearance and accompanying assumptions about her behavior based on perceived racial behaviors.

114. The t-shirt Plaintiff McKelvey (who is married to another woman) was wearing that explicitly implied her sexual orientation and preferences, this made her a target pretextually based on her sexual orientation.

115. Defendant American Airlines has also banned Plaintiff McKelvey from future flights - an action that unfairly affects her due to her race, national origin, and sexual orientation.

116. The treatment of Plaintiff McKelvey by American Airlines, including the initial accusation, the subsequent removal from the plane, the interrogation, and the flight ban, were actions steeped in discriminatory practices prohibited under Title II of the Civil Rights Act.

117. Other passengers on Flight 1162 were not subjected to similar adverse actions; and no evidence was identified suggesting that individuals who did not appear to be of mixed race or Black received comparable treatment under similar circumstances.

118. Defendant American Airlines' actions lacked justification based on legitimate safety concerns.

119. The captain of the flight possessed prior knowledge regarding the maintenance issue affecting the emergency exit door sensors, which was, in fact, subsequently confirmed as a sensor defect unrelated to the Plaintiff's conduct as a passenger on Flight 1162.

120. Defendant American Airlines' discriminatory actions against Plaintiff McKelvey caused her to suffer significant emotional distress, humiliation, and financial loss.

121. Plaintiff incurred financial losses related to contesting the civil fine imposed against her, as well as missing a once-in-a-lifetime family event - the birth of her granddaughter, and emotional distress causing her to miss time from work.

122. Defendant's actions violated Title II of the Civil Rights Act, because Defendant discriminated against Plaintiff McKelvey based on race, color, national origin, or sexual orientation.

Plaintiff McKelvey seeks recovery of all actual economic and non-economic damages, including consequential, compensatory, and punitive damages, attorney's fees, costs, and expenses, with specific amounts to be determined at trial.

### B.  COUNT TWO: NEGLIGENCE – FAILURE TO PROPERLY MAINTAIN AND REPAIR AN AIRCRAFT

123. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

124. On July 21, 2023, Plaintiff was a passenger on American Airlines Flight 1162, which was operated under the regulations governing commercial air travel, including but not limited to 14 C.F.R. 121 of the Federal Aviation Regulations.

125. Specifically, §§121.363, 367, 369, 373, and 380 set forth the requirements for air carriers to exercise diligence in the inspection, maintenance, and record keep of all aircraft.

126. 4 C.F.R. 121 of the Federal Aviation Regulations §121.363 states (in relevant part):

    (a) Each certificate holder is primarily responsible for -

        (1) The airworthiness of its aircraft, including airframes, aircraft engines, propellers, appliances, and parts thereof; and

        (2) The performance of the maintenance, preventive maintenance, and alteration of its aircraft, including airframes, aircraft engines, propellers, appliances, emergency equipment, and parts thereof, in accordance with its manual and the regulations of this chapter.

    (b) A certificate holder may make arrangements with another person for the performance of any maintenance, preventive maintenance, or alterations. However, this does not relieve the certificate holder of the responsibility specified in paragraph (a) of this section.

127. Under §121.363, an airworthiness certificate holder can delegate work to a third party but remains responsible for ensuring it is completed according to maintenance schedules, guidelines, and manuals.

128. On July 21, 2023, while Plaintiff was a passenger on American Airlines flight 1162, a malfunction occurred with the emergency exit door sensors at the 3R door.

129. This issue caused the cockpit to receive a false warning that the 3R door had been tampered with or opened, leading to unnecessary emergency procedures.

130. The incorrect signal affected the safety and well-being of both passengers and crew.

131. Under 14 C.F.R. §121.363, American Airlines was responsible for ensuring the proper maintenance, operation, and repair of its Airbus A321-231 (Serial Number 5899, Model V2533-A5, Registration N572UW).

132. Pursuant to 14 C.F.R.§ 121.367, Maintenance, preventive maintenance, and alterations programs:

> Each certificate holder shall have an inspection program and a program covering other maintenance, preventive maintenance, and alterations that ensures that - (a) Maintenance, preventive maintenance, and alterations performed by it, or by other persons, are performed in accordance with the certificate holder's manual; (b) Competent personnel and adequate facilities and equipment are provided for the proper performance of maintenance, preventive maintenance, and alterations; and (c) Each aircraft released to service is airworthy and has been properly maintained for operation under this part.

*Id*. at 14 C.F.R.§ 121.367.

133. The aircraft's original airworthiness certificate was issued to U.S. Airways (and its subsidiaries) on December 13, 2013, after its manufacture by Inter Aero Engines and importation from Hamburg, Germany.

134. Under 14 C.F.R. §121.363 American Airlines had an ongoing duty to keep the aircraft in a reasonably safe condition and to confirm that all components, including the sensors on emergency exit doors (also called "blocker doors"), were fully functional to protect the safety and welfare of all passengers.

135. On July 21, 2023, the Captain of AA Flight 1162 chose to operate the aircraft despite knowing of the faulty blocker door sensors - postponing the necessary repairs until after landing.

136. This action violated the duty of care owed to both passengers and crew members.

137. American Airlines was negligent by not fixing the known defect affecting the 3R blocker door sensor located near the Plaintiff's seat.

138. As a result of this negligence, the sensor malfunctioned, leading to emergency procedures.

139. Defendant, American Airlines, failed to properly inspect and maintain the emergency exit doors and their sensors, contravening aviation safety regulations.

140. By breaching of this duty of, Defendant American Airlines allowed Flight 1162 to be operated under unsafe conditions - placing both the Plaintiff and all other passengers and crew at risk of harm.

141. Moreover, Defendant's failure to maintain and repair the aircraft directly set in motion a series of events whereby Plaintiff was wrongfully accused of tampering with the aircraft door - resulting in Plaintiff being subjected to significant personal humiliation, embarrassment, inconvenience, missing a once-in-a-lifetime event (the birth of her granddaughter), and financial harm.

142. The negligent maintenance and repair of the aircraft is demonstrated by the captain's awareness of the sensor issue and Defendant American Airlines' decision not to inspect, investigate, or ground the aircraft along with its blocker door and sensors following the flight.

143. An inspection should have included measures such as dusting for fingerprints to conclusively establish whether the emergency exit door had been tampered with and, if so, by whom.

144. As a direct result of Defendant's negligence, Plaintiff was subject to unnecessary and wrongful detention and interrogation, followed by legal and administrative proceedings.

145. These events could have been avoided had Defendant complied with standard aircraft maintenance and safety protocols.

146. Plaintiff incurred damages due to Defendant's negligent maintenance and repair of the aircraft, including but not limited to emotional distress, defamation, and financial expenditures related to legal representation and administrative fines which were initially imposed and subsequently dismissed.

147. Plaintiff requests all actual economic and non-economic damages, consequential, compensatory, and punitive damages, attorney fees, costs, fees, expenses in an amount to be determined at trial.

### C. COUNT THREE: GROSS NEGLIGENCE IN INVESTIGATING THE ALLEGATIONS

148. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

149. Defendant FAA had a duty to conduct a complete, competent, and thorough investigation into the allegations made against Plaintiff Jessica McKelvey regarding her alleged interaction with the aircraft's emergency exit door.

150. The FAA breached this duty by failing to properly investigate the facts and circumstances surrounding the incident and by failing to consider critical maintenance issues which were known and readily available regarding the failure of the sensor on the blocker door – particularly the door in row 24 where Plaintiff McKelvey was seated.

151. The FAA knew that the flight's Captain had reported a maintenance problem with the blocker door sensors but incorrectly labelled the issue as someone trying to open the door instead.

152. Additionally, the FAA did not review maintenance records or inspections, nor did it investigate previous sensor problems for this aircraft model.

153. Evidence that could have cleared Plaintiff McKelvey was available and could have been accessed early in the investigation to resolve the matter.

154. Moreover, the FAA was grossly negligent by failing to comply with federal document and record retention statutes.

155. The FAA destroyed critical evidence and records related to this incident. This destruction of evidence was particularly critical to Plaintiff's defense, and it directly impacted the outcome of the FAA's investigation.

156. The FAA's failure to conduct a complete, competent, and thorough investigation, including their disregard for known maintenance issues and the improper destruction of records, constitutes gross negligence for which Plaintiff seeks compensation.

157. The FAA's gross negligence directly caused Plaintiff McKelvey to suffer damages, including emotional distress due to false accusations and fear that a malfunctioning blocker door might open during flight, potentially causing her to fall out of the plane.

158. Additionally, American Airlines' failure to maintain the aircraft led to further harm, such as reputational damage, financial losses from attorney's fees and costs, and other compensatory damages.

159. The FAA's negligent handling the investigation into the facts and circumstances related to this incident not only demonstrate a lack of diligence but also demonstrate a breach of the duty of care, and a blatant disregard of Plaintiff's civil rights – causing Plaintiff to suffer significant personal, reputational, and financial harm.

160. Plaintiff requests all actual economic and non-economic damages, consequential, compensatory, and punitive damages, attorney fees, costs, fees, expenses in an amount to be determined at trial.

## D.  COUNT FOUR: GROSS NEGLIGENCE IN DESTROYING RECORDS

161. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

162. Defendant FAA is under a continuing statutory obligation to preserve and maintain all records relevant to investigations and incidents involving aviation safety and security.

163. The FAA breached its duty by destroying records related to the allegations asserted against Plaintiff. Defendant FAA knew, or should have known, that the flight records for flight #1162 were critical - not only for ongoing administrative purposes - but also for these legal proceedings.

164. The destruction of the incident records is not merely negligent - it is grossly negligent. The FAA's actions were reckless and disregarded Plaintiff's rights.

165. Moreover, the FAA's detrimental conduct adversely impacted Plaintiff's ability to exercise all legal and administrative remedies available to her.

166. The FAA's gross negligence hindered Plaintiff's defense in the administrative proceedings wherein the FAA sought to assess a substantial civil fine.

167. Destroying records during the civil case deprived Plaintiff of access to crucial evidence, negatively affecting her legal and financial position.

168. The loss of these documents compromised the investigation and administrative process and posed a risk to aviation safety by leaving mechanical issues unaddressed.

169. As a result, Plaintiff McKelvey incurred damages, including financial costs, emotional distress, and reputational harm.

170. Plaintiff requests all actual economic and non-economic damages, consequential, compensatory, and punitive damages, attorney fees, costs, fees, expenses in an amount to be determined at trial.

### E.  COUNT FIVE: NEGLIGENCE INFLICTION OF EMOTIONAL DISTRESS

171. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

172. The FAA and American Airlines failed to meet their duty of care by conducting a negligent, insufficient and, incompetent investigation into the allegations that Plaintiff tampered with the aircraft's emergency exit door.

173. Additionally, the FAA breached its statutory duty to preserve and maintain all records related to aviation safety and security investigations.

174. These failures were a direct cause of the harm experienced by the Plaintiff.

175. Defendant American Airlines was negligent by failing to properly maintain and repair the aircraft according to safety standards and by failing to monitor and repair sensors on the aircraft's door.

176. American Airlines further failed to comply with federal regulations, including 42 U.S.C. §2000a of Title II of the Civil Rights Act of 1964 and 49 U.S.C. §41705 of the Aircraft Carrier Access Act.

177. American Airlines wrongfully assigned fault to an innocent person - Plaintiff McKelvey - who was asleep on the flight and was not involved in the alleged tampering.

178. Defendant wrongfully alleged that Plaintiff participated in criminal conduct thereby discriminating against her based on her racial appearance and sexual identity.

Defendants FAA and American Airlines' collective negligence directly caused Plaintiff McKelvey to suffer considerable emotional distress, mental anguish, and symptoms consistent with PTSD.

179. The distress was worsened by her public removal from the plane, which resulted in embarrassment and trauma that was foreseeable given the false accusations and subsequent detainment.

180. As a direct result, Plaintiff now depends on the assistance of a service animal.

181. Plaintiff seeks compensatory and punitive damages for considerable losses, including medical and mental health treatment costs, lost wages, ongoing emotional suffering and anxiety, the financial cost and need for a service animal, and damage to her reputation.

182. Plaintiff requests all actual economic and non-economic damages, consequential, compensatory, and punitive damages, attorney fees, costs, fees, expenses in an amount to be determined at trial.

## F.   COUNT SIX: DEPRIVATION OF RIGHTS UNDER COLOR OF LAW, 42 U.S.C. 1983

183. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

184. Plaintiff is a citizen of the United States and acted under the color of state law at all relevant times herein.

185. Defendants American Airlines and the FAA, acted under color of state law during the incidents described herein.

186. Defendants, through their actions, deprived Plaintiff of the rights, privileges, and immunities secured by the Constitution and laws of the United States.

187. Plaintiff argues her Fourth Amendment right against unreasonable searches and seizures was violated when she was detained and searched without probable cause or reasonable suspicion.

188. Despite readily available evidence supporting the fact that Plaintiff fell asleep during the flight and that she had no knowledge of or direct or indirect involvement with the alleged tampering of the aircraft's emergency exit door, Defendants nonetheless escorted her from the plane, detained her, imposed a monetary fine against her.

189. Additionally, she is barred from future travel on American Airlines.

190. Plaintiff's Fifth Amendment right to due process was also violated.

191. Despite her consistent denials and the lack of evidence against her, Plaintiff was subjected to detention and a proposed civil penalty by the FAA based on false accusations made and without proper investigation into the mechanical failures reported by Plaintiff and the undersigned.

192. Additionally, Plaintiff's First Amendment rights were infringed upon when she was targeted and discriminated against based on her race, sexual orientation, and national origin as evidenced by the disparate treatment she received.

193. Plaintiff was specifically targeted based on her appearance and the suggestive message displayed on her T-shirt.

194. The targeted actions by the Defendants were intentional, willful, and in reckless disregard of Plaintiff's federally protected rights.

195. As a direct and proximate result of Defendants' actions, Plaintiff suffered damages including emotional distress, humiliation, and financial harm due to legal costs and other related expenses.

196. Plaintiff seeks redress for these violations under 42 USC § 1983 for the deprivation of her constitutional rights as directly caused by the actions of Defendants acting under color of state law.

197. Plaintiff requests all actual economic and non-economic damages, consequential, compensatory, and punitive damages, attorney fees, costs, fees, expenses in an amount to be determined at trial.

### G.  COUNT SEVEN: RACIAL DISCRIMINATION, 42 U.S.C. 1981

198. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

199. 42 U.S.C. § 1981 bars racial discrimination in making and enforcing all types of contracts, whether express or implied-in-fact.

200. Plaintiff McKelvey is a Black French Creole (European), Mexican, and Native-American woman, thus belonging to a racial minority.

201. Plaintiff asserts that her rights under 42 U.S.C. § 1981 were infringed by Defendants through alleged racial discrimination.

202. On July 21, 2023, while traveling as a passenger on American Airlines Flight 1162, Plaintiff reports being subjected to treatment that differed from that of passengers of other racial backgrounds.

203. Plaintiff chose the emergency exit seat based on her professional experience in aircraft safety, highlighting her ability and readiness to take on its duties.

204. Although the Plaintiff possessed the necessary qualifications and promptly volunteered her assistance, her competence and integrity were scrutinized under circumstances that are indicative of racial bias.

205. The actions taken by the flight crew and involved authorities differed from those typically exercised with other non-minority passengers facing similar scenarios.

206. The Plaintiff was accused of interfering with the aircraft's emergency exit door, an allegation stemming from mistaken and potentially discriminatory perceptions held by the flight crew and an off-duty police officer, influenced by the Plaintiff's racial characteristics and her distinctive dreadlock hairstyle.

207. The actions directed toward Plaintiff, including her removal from the aircraft upon landing, followed by detention and questioning by law enforcement, were influenced by racial discrimination.

208. These measures deprived her of the contractual rights afforded to passengers, including the entitlement to be free from racially discriminatory treatment during air travel.

209. Moreover, the discriminatory conduct and the unfounded, damaging accusation resulted in a civil penalty notice issued by the Federal Aviation Administration (FAA), which reinforced the adverse effects associated with the original act of racial bias.

210. The FAA ultimately dismissed the civil penalty after evidence indicated a mechanical failure rather than any conduct by the Plaintiff, highlighting the lack of foundation for the original actions taken against her.

211. As a direct and proximate result of the Defendants' actions, Plaintiff suffered damages, including emotional distress, humiliation, and damage to her professional reputation, all of which were magnified by the public nature of the accusations and the subsequent legal and administrative proceedings.

212. Plaintiff requests all remedies afforded under 42 U.S.C. § 1981, including both compensatory and punitive damages, to remedy the alleged violations of her rights guaranteed by this statute.

213. Plaintiff requests all actual economic and non-economic damages, consequential, compensatory, and punitive damages, attorney fees, costs, fees, expenses in an amount to be determined at trial.

## H.  COUNT EIGHT: VIOLATION OF THE 14TH AMENDMENT

214. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

215. The Fourteenth Amendment bars states from depriving individuals of life, liberty, or property without due process, and guarantees equal protection under the law.

216. The Plaintiff asserts that the conduct of the Defendants, either as state actors or acting under the authority of state law, resulted in the deprivation of her rights guaranteed by the Fourteenth Amendment to the United States Constitution.

217. Plaintiff asserts that the Defendants engaged in actions that discriminated against her based on her race, national origin, and sexual orientation as previously stated herein - violating of her constitutionally protected rights to equal protection under the law.

218. Plaintiff was detained and questioned by the FBI and FAA without justification and faced a proposed civil penalty from the FAA based on unsubstantiated claims of aircraft tampering, which were not properly investigated.

219. These actions lacked procedural safeguards and violated her due process rights.

220. Defendants' conduct, including the FAA's notice of a civil penalty and actions by American Airlines staff and law enforcement, took place under color of state law and involved state actors, raising Fourteenth Amendment concerns.

221. The Plaintiff asserts that the Defendants' conduct was intentional, willful, and demonstrated reckless disregard for her federally protected rights under the Fourteenth Amendment.

222. As a direct and proximate consequence of the Defendants' alleged violations of the Fourteenth Amendment, Plaintiff has incurred damages, including emotional distress, humiliation, and other compensatory losses, the extent of which shall be determined during trial.

223. Plaintiff requests declaratory and injunctive relief, in addition to compensatory and punitive damages, against all Defendants for the alleged infringement of rights secured by the Fourteenth Amendment to the United States Constitution.

Moreover, Plaintiff seeks recovery of all actual economic and non-economic damages, consequential, compensatory, and punitive damages, attorney's fees, costs, and expenses, with amounts to be determined at trial.

## I. COUNT NINE: VIOLATION OF THE FIRST AMENDMENT BY DEFENDANTS AND AMERICAN AIRLINES (BASED ON THEIR RELATIONSHIP WITH THE FAA), WHICH ACCEPTED AMERICAN AIRLINES' WRONGFUL ACCUSATIONS WITHOUT CONDUCTING AN INDEPENDENT INVESTIGATION INTO THE SENSOR AND BLOCKER DOOR MALFUNCTION.

224. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

225. The First Amendment to the United States Constitution prohibits the government from making laws which regulate an individual's freedom of speech, or that right to express any opinions without censorship or restraint.

226. Plaintiff alleges that her First Amendment rights were violated when Defendants, acting under color of state law, targeted and discriminated against her based on her expression and identity, thereby chilling her free speech and punishing her for her expressive conduct.

227. On July 21, 2023, Plaintiff was wearing a T-shirt with a message that expressed her identity and personal views, which is a protected form of expression under the First Amendment.

228. Despite Plaintiff's peaceful and passive expression of her views through her attire, Defendants, including law enforcement and airline staff, subjected her to discriminatory

treatment when she was falsely accused of tampering with an aircraft emergency exit door -

leading to her wrongful detention and interrogation.

229. Defendants acted out of prejudice and bias toward Plaintiff's sexual identity and views,

evidenced by the excessive scrutiny and actions which were taken against her.

230. Unlike other passengers onboard American Airlines flight #1162, Plaintiff faced disparate

treatment based on her appearance and the message on her T-shirt.

231. These targeted and punitive measures were intended to suppress Plaintiff's right to free

speech and to punish her for expressing herself and flaunting her sexual identity.

232. As a result of Plaintiff's exercise of her First Amendment right to free speech, Defendants

retaliated against her when she exercised her rights.

233. As a direct and proximate result of Defendants' actions, Plaintiff suffered damages including

emotional distress, humiliation, and violation of her constitutional rights.

234. The Plaintiff's choice of clothing did not disrupt any valid government interests, nor did it

threaten airline safety or public order. As a result, the Defendants' punitive measures were

unjustified and violated the Plaintiff's First Amendment rights.

235. By acting under state authority to suppress and retaliate against the Plaintiff's legally

protected speech due to her identity and beliefs, the Defendants infringed on the First

Amendment of the United States Constitution.

236. The plaintiff respectfully requests declaratory and injunctive relief, seeking determination

that the defendants' conduct infringed upon her First Amendment rights and an order restraining

the defendants from committing further constitutional violations.

237. Plaintiff requests all actual economic and non-economic damages, consequential, compensatory, and punitive damages, attorney fees, costs, fees, expenses in an amount to be determined at trial.

## J.  COUNT TEN: VIOLATION OF THE FIFTH AMENDMENT AS TO DEFENDANT FAA

238. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

239. The Fifth Amendment to the United States Constitution guarantees that no person shall be deprived of life, liberty, or property without due process of law.

240. Plaintiff asserts that Defendants, through the conduct described herein, have deprived her of liberty without due process of law.

241. On July 21, 2023, Plaintiff was accused by employees of American Airlines and an off-duty police officer of allegedly tampering with an emergency exit door during a flight.

242. As a result, she was escorted from the aircraft by law enforcement upon arrival and subsequently subjected to an investigation by the Federal Aviation Administration (FAA).

243. Law enforcement detained Plaintiff intending to question her but failed to explain her rights or promptly inform her of the reasons for her detention, resulting in a loss of liberty without proper procedural due process.

244. Following Plaintiff's detention, the FAA issued a Notice of Proposed Civil Penalty against her based on the erroneous claims.

245. This action further deprived her of liberty without due process, as she was required to respond and take part in legal proceedings rooted in baseless accusations.

246. There was no adequate factual justification or thorough investigation into the plaintiff's detention and the legal proceedings that followed.

247. This is evidenced by the FAA's civil action ultimately being dismissed and the absence of reliable evidence connecting her to any aircraft tampering.

248. The actions of Defendants, including the premature destruction of FAA records relevant to Plaintiff's defense, hindered her ability to contest the allegations effectively, further violating her right to procedural due process under the Fifth Amendment.

249. As a direct and proximate result of Defendants' actions, Plaintiff suffered significant emotional distress, damage to her reputation, and financial harm due to legal costs and other related expenses.

250. Plaintiff seeks redress for these violations through this action.

251. Plaintiff requests all actual economic and non-economic damages, consequential, compensatory, and punitive damages, attorney fees, costs, fees, expenses in an amount to be determined at trial.

### K.  COUNT ELEVEN: VIOLATION OF THE FOURTH AMENDMENT AS TO DEFENDANT FAA

252. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

253. The Fourth Amendment of the United States Constitution guarantees the right of individuals to be secure against unreasonable searches and seizures.

254. A Fourth Amendment "search" happens when the government violates a reasonable expectation of privacy, and "seizure" occurs when the government intentionally restricts a person's freedom of movement.

255. On July 21, 2023, Plaintiff McKelvey was a passenger on American Airlines Flight 1162 when she was the target of actions initiated by federal agents that constituted a search and seizure under the Fourth Amendment.

256. Plaintiff was awakened and removed from her seat by the flight crew, acting under the direction of the aircraft's captain who received an erroneous report of a possible security issue by an off-duty police officer who lacked any direct evidence connecting the Plaintiff any perceived wrongdoing.

257. Upon landing, Plaintiff was escorted off the aircraft by law enforcement officers and subsequently detained. She was questioned about the malfunctioning door sensor despite the lack of any specific or credible evidence linking her to any criminal activity or wrongdoing.

258. The detention and questioning Plaintiff, without probable cause or reasonable suspicion of her involvement the purported criminal activity, constitutes an unreasonable seizure in violation of the Fourth Amendment.

259. The FAA caused the FBI to subsequently be involved in Plaintiff's extended period of detention (exceeding 60 minutes) and attempted search of Plaintiff without a warrant further violated her the Fourth Amendment rights.

260. Without a warrant, probable cause, or any reasonable suspicion, the FBI nonetheless detained and questioned the Plaintiff about alleged aircraft door tampering, relying only on mistaken accusations from an off-duty police officer.

261. These claims were always incorrect and unsupported, as shown by the FAA's dismissal of the civil penalty.

262. The violation of Plaintiff's Fourth Amendment rights proximately caused Plaintiff to suffer emotional distress, humiliation, and harm to her reputation. Plaintiff is seeking declaratory and injunctive relief, and compensatory and punitive damages for the violations of her rights.

263. Plaintiff requests all actual economic and non-economic damages, consequential, compensatory, and punitive damages, attorney fees, costs, fees, expenses in an amount to be determined at trial.

## L. COUNT TWELVE: BREACH OF CONTRACT AS TO DEFENDANT AMERICAN AIRLINES

264. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

265. A valid contract existed between Plaintiff McKelvey and Defendant American Airlines. Plaintiff's mother, Ms. Koeler entered purchased the ticket for Defendant, American Airlines, of which Plaintiff McKelvey was the intended third-party beneficiary, when Ms. Koeler purchased a ticket for her daughter, Plaintiff McKelvey, on Flight 1162 from Dallas/Fort Worth International Airport (DFW) to Ontario International Airport (ONT) on July 21, 2023.

266.  This ticket purchase formed a contract wherein American Airlines agreed to transport Plaintiff safely and without unnecessary interruption from the origin to the destination.

267. Plaintiff performed all obligations pursuant to the terms of contract or were excused from performing those obligations.

268. Plaintiff fulfilled all requisite conditions for performance under the contract by paying for the ticket, appearing at the gate for the flight in a timely manner, complying with all pre-flight and in-flight instructions, and conducting herself in a manner consistent with the terms and conditions as set forth by American Airlines.

269. Defendant American Airlines breached the contract with Plaintiff when they falsely accused Plaintiff of tampering with the intent to open an emergency exit door in-flight.

270. The false and erroneous accusations led resulted in an unnecessary emergency landing, Plaintiff McKelvey being escorted off the aircraft by law enforcement and subsequently banned from future American Airlines flights.

271. Defendant's actions were unjustified, mistaken, unwarranted, and not supported by a scintilla of credible evidence as Plaintiff did not engage in any misconduct during the flight.

272. Plaintiff suffered damages which were proximately caused by Defendant's breach of contract.

273. Plaintiff McKelvey suffered significant damages including emotional distress, public humiliation, and damage to her personal and professional reputation.

274. Plaintiff as a third party beneficiary to the contract sustained financial loss when Defendant American Airlines failed to transport her  to her intended destination in a timely manner to allow her to complete the trip's intended purpose – to be present for the birth of her granddaughter.

275. Defendant American Airlines failed to deliver the benefit of the bargain to Ms. Koeler and the third-party beneficiary Plaintiff McKelvey.

276. Defendant further proximately caused Plaintiff McKelvey to incur financial losses from the disruption of her travel plans and subsequent transportation arrangements, in addition to the legal costs incurred with contesting the unfounded allegations and subsequent ban imposed by American Airlines.

277. Defendant American Airlines' breach of contract caused these reasonably foreseeable damages to the Plaintiff in this case.

278. Plaintiff requests all actual economic and non-economic damages, consequential, compensatory, and punitive damages, attorney fees, costs, fees, expenses in an amount to be determined at trial.

**M. COUNT THIRTEEN: NEGLIGENT MANUFACTURE OF AIRCRAFT, BLOCKER DOORS AND SENSORS ON BLOCKER DOORS, AND SENSORS IN COCKPIT FOR AIRCRAFT INVOLVING BLOCKER DOORS**

279. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

280. At all times relevant herein, Defendant Intern Aero Engines (IAE) was the original manufacturer of the aircraft involved in the incident and Flight 1162 described herein.

281. As an aircraft manufacturer, Defendant IAE had a duty of care to produce non-defective parts to be assembled into the aircraft and to warrant that the parts assembled into the aircraft are airworthy.

282. If at any time parts involved in the manufacture and assembly of the aircraft model in question became known to Defendant IAE as being defective, IAE had a duty of care to issue a

timely recall of all parts and to recommend grounding of aircraft until repairs are made, if necessary, to maintain airworthiness and to ensure the safety of passengers and crew.

283. Defendant IAE knew or should have known that Boeing Aircraft, a competitor manufacturer, experienced issues with its blocker doors and sensors.

284. Defendant IAE thereafter failed to take appropriate actions to investigate its blocker doors and sensors to determine if there was any risk of harm that could be prevented if addressed proactively.

285. Defendant IAE's failure to investigate and address the potential of issues with its blocker doors and sensors constitutes a breach of duty of care to manufacture a product free of defects and a breach of the warranty of merchantability of the aircraft's component parts.

286. As a direct and proximate cause of Defendant IAE's negligent manufacture, defect of aircraft, and breach of warranty, Plaintiff suffered harm including Plaintiff McKelvey being falsely accused of attempting to open an aircraft door when in the door and/or its sensors failed in-flight.

287. Due to Defendant IAE's negligent manufacturing, aircraft defects, and breach of warranty, the Plaintiff experienced harm.

288. Specifically, Plaintiff passenger was seated beside a blocker door (emergency exit) that could have fully opened, posing a risk to their life and, regardless, causing significant emotional distress.

289. Plaintiff McKelvey experienced actual economic damages, attorney fees, costs, expenses, fees, and non-economic damages, emotional distress, mental anguish, anxiety, as a proximate and direct result of Defendant IAE's negligent actions or omissions.

290. Plaintiff request all actual economic and non-economic damages, consequential, compensatory, and punitive damages, attorney fees, costs, fees, expenses in an amount to be determined at trial.

## VI. DEMAND

WHEREFORE, Plaintiff respectfully prays this Court:

    A. Grant judgment in favor of Plaintiff on all claims and for the remedies sought in each claim and count;

    B. Issue a judicial determination of the rights, duties, and obligations of the parties hereto;

    C. Enjoin Defendant American Airlines from enforcing the ban against Plaintiff passenger from flying with the airline and from engaging in discriminatory practices based on race, national origin, or sexual orientation in accordance with Title II of the Civil Rights Act;

    D. Award Plaintiff actual damages and punitive damages in an amount to be determined at trial to include the appropriate multiplier for the emotional distress, mental anguish, anxiety, reputational damage, and other impacts suffered;

    E. Grant Plaintiff the maximum economic, non-economic, actual, statutory (including the maximum statutory damages), emotional, general, special, punitive, and other damages available, and statutory interest thereon;

    F. Award Plaintiff attorney fees with the appropriate multiplier plus costs and expenses of litigation, as provided under the relevant statutes;

G.  Order the Federal Aviation Administration to reinstate all destroyed records and comply with federal document retention statutes;

H.  Award Plaintiff such other relief that the Court deems just and appropriate under the circumstances and is permitted by law.

**JURY DEMAND**

PLAINTIFF HEREBY DEMANDS A JURY ON ALL TRIABLE MATTERS.

Respectfully Submitted,

/s/ Kati L. Komorosky

Kati L. Komorosky (MI BAR P86376)
Attorney for Plaintiff
Komorosky Law, PLLC
250 Monroe Ave NW Ste 400
Grand Rapids, MI 49503
kati@komoroskylaw.com
(231) 330-5081